BRAJCICH, APPELLANT, *v.* REPUBLIC COAL CO. ET AL., RESPONDENTS.

(No. 7,043.)

(Submitted May 27, 1933. Decided June 29, 1933.)

[23 Pac. (2d) 337.]

*Mr. Wellington D. Rankin* and *Mr. Frank W. Mettler,* for Appellant, submitted a brief; *Mr. Arthur P. Acher* and *Mr. Leo J. Kottas,* of Counsel, argued the cause orally.

*Mr. W. W. Mercer* and *Messrs. Murphy & Whitlock,* for Respondents, submitted a brief; *Mr. Mercer* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On October 31, 1929, Nick Brajcich, appellant, while in the employment of the Republic Coal Company, respondent, fractured his fifth left rib in an industrial accident. He recovered compensation for total disability until February 21, 1930. Upon the refusal of the respondent to pay further compensation, the matter was presented to the Industrial Accident Board. Two hearings were had by the board, both of which resulted in a decision denying Brajcich compensation. An appeal was taken to the district court of Musselshell county, wherein the court adopted the findings of the Industrial Accident Board "that Nick Brajcich, the plaintiff and appellant herein, has no loss of earning power by reason of disability, resulting from his accident of October 31, 1929, and that judgment of dismissal should be entered herein," and entered a judgment dismissing the claim. This appeal is from that judgment.

The sole question for determination on this appeal is whether there was sufficient evidence upon which to base the finding that Nick Brajcich suffered no loss of earning capacity after February 21, 1930, by reason of the accident. "Our duty, then, is but to determine whether the evidence before the board clearly preponderates against its findings, as adopted

by the court; if not, we must affirm the judgment. The rule that the supreme court will not reverse the findings of the district court, except where the evidence clearly preponderates against them, is so well settled in this jurisdiction as to hardly require repetition." (*Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124, 126; *Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 273 Pac. 294.)

It is admitted that appellant fractured his fifth left rib and also that the fracture healed completely and that the rib is now in perfect alignment. Brajcich bases his claim to compensation on the theory that the injury to the chest caused a traumatic neuritis of the intercostal nerve, and that, by reason thereof, he suffers such severe pain that he is unable to work. It is clear from the record that appellant at the time of the various hearings was suffering from fibrosis of the lungs, chronic bronchitis, chronic asthma, bad teeth and atrophied tonsils, and there is credible evidence to the effect that he had pyorrhea, enlarged prostates, infected kidneys and an enlarged heart.

Dr. Allard, called by the appellant, testified that in his opinion the traumatic neuritis of the intercostal nerve was the result of the accident of October 31, 1929. He based his opinion on the fact that there was no neuritis prior to the injury, and that, since neuritis appeared after the injury, the cause of the neuritis could be traced directly to the injury. He said, however, that the pains which Brajcich suffered might be caused by toxic poisons in the man's system, and, further, that the common cause of neuritis is infection and not trauma. Dr. Alexander, who first treated Brajcich, deferred to the opinion of Dr. Allard as that of a specialist.

Dr. Watkins testified that in his opinion "the major portion of it [the disability] is from the old chronic conditions."

Dr. Garberson testified that in his opinion the pain and discomfort suffered by Brajcich was not caused by the injury. He based his opinion on the fact that Brajcich was suffering from neuritis in the left arm, neck, left leg, and chest, and that neuritic pains over a wide area could not be caused by a

blow on the chest. He testified that there are but two sources of general neuritis, (1) an injury to the spine or large nerve trunks, and (2) general infection of the body; and, further, that a majority of cases of neuritis and neuralgia are not due to trauma. He also testified that neuritic pains can develop very suddenly. For these reasons Dr. Garberson opined that the disability was due to chronic infections and not to the injury, although he admitted that there was a possibility that the neuritis was caused by the accident.

Brajcich testified that prior to the injury he had suffered no disability by reason of neuritic pains, but that since the injury he had been unable to work by reason of the severe pain in his chest. This testimony was to some degree impeached by a letter written by Dr. Alexander on February 22, 1930, in part reading: "Complying with your request for a statement of the present condition of Nick Brajcich, would say that his condition is substantially about what he described to you, namely that insofar as his fractured rib is concerned the time for recovery is well past, and as he related to you, if it were not for the old bronchial trouble he has he should be able to return to work, and have so advised him, but he feels that he is incapacitated on account of his cough to do a day's work, but thinks he could attend to a surface job where the atmospheric conditions are better suited to his bronchitis."

In view of the sharp conflict between the testimony of Dr. Garberson and Dr. Allard, and in view of the opinion of Dr. Watkins, we are unable to say that the evidence clearly preponderates against the finding of the board. Both Dr. Allard and Dr. Garberson assigned plausible reasons for their opinions, and it was within the discretion of the board to resolve the conflict in the evidence in favor of the respondent.

The question for decision by this court is not one of fact, but of law. The Industrial Accident Board, after full hearing, decided the case against the claimant upon the record of its hearings. The district court upon the record of the board supplemented by additional testimony taken in court likewise decided against him. In view of the evidence in this case, we

may well reiterate the language of the court in the case of *Kirby* v. *Hoeh*, 94 Mont. 218, 21 Pac. (2d) 732, 735: "To us, out of the presence and hearing of the witnesses, it appears that the court below might well have reached a different result; but it would be a gross perversion to say that the findings and decree are without substantial evidence to support them."

The intent of the Compensation Law (Laws 1915, Chap. 96, as amended), as often expressed by this court, was to aid and protect the workman. The burden of interpreting the law liberally to protect the workman is upon everyone connected with the administration of the Act, including this court; but primarily it is upon the board, because that board is a lay body not unduly restricted by formal legal procedure. We cannot presume that the board was blind to such humanitarian considerations as we have mentioned. To say that the board was in error upon the record in this case would be to go further than the record warrants. In fact, it would do violence to the established rule of procedure in this and other states.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE ANGSTMAN, Dissenting: In my opinion, due consideration is not given in this case to the rule of law announced in *Nicholson* v. *Roundup Coal Co.*, 79 Mont. 358, 257 Pac. 270, and in *Murphy* v. *Industrial Accident Board*, 93 Mont. 1, 16 Pac. (2d) 705, to the effect that a workman is entitled to compensation when a pre-existing latent condition or disease is aggravated or accelerated by an accidental injury. Plaintiff's physicians testified that such was the case here. Defendant's physicians did not contradict such testimony so as to raise a conflict in the evidence. Dr. Watkins, defendant company's physician, admitted that "any trauma is apt to give neuritis," and, when asked, "All we want is your opin-

ions, Doctor, as from a medical standpoint, the cause of the present condition,'' the most he would say was, ''I will say the major part of it is from his old chronic condition.'' Obviously, then, at least a part of it must have been due to the injury.

Dr. Garberson, defendant's only other witness, while testifying that in his opinion plaintiff's disability was due to chronic infections, frankly stated, on cross-examination: ''Yes, I think there is no question the injury is an aggravation of the condition present.'' He also said: ''Traumatic neuritis would be strictly speaking an inflammation of the nerve due to an injury, due to a trauma. It is very likely that in the presence of a trauma, in the presence of an infected condition, it would be apt to bring about a neuritis condition.''

There is no substantial conflict in the evidence that the injury aggravated the previously existing ailment resulting, partially at least, in plaintiff's inability to work. But, if the direct examination of defendant company's doctors may be said to raise a conflict, it was so weakened on cross-examination as to leave the clear preponderance of the evidence in favor of plaintiff's right to compensation.